# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

Eddie Ray Hall,

                 Petitioner,      Case No. 17-cv-10786

v.                             Judith E. Levy
                               United States District Judge

J.A. Terris,

                             Mag. Judge Mona K. Majzoub
               Respondent.

_____/

# OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS [1], DENYING A CERTIFICATE OF APPEALABILITY, AND DENYING LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL

Petitioner Eddie Hall, a prisoner confined at the Federal Correctional Institution in Milan, Michigan, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 on March 13, 2017. (Dkt. 1.) Petitioner challenges the Discipline Hearing Officer's ("DHO") finding that he violated Code 113 by possessing alcohol on "camp grounds" while incarcerated at FCI Engelwood, Colorado. (Dkt. 1 at 5.) This violation resulted in sanctions, including the loss of 41 days good

conduct time. Petitioner seeks to have the finding reversed, and the good conduct time restored. (Dkt. 1 at 6.)

For the reasons set forth below, the petition for a writ of habeas corpus is denied.

## I. Background

Petitioner was convicted in federal court of distributing 50 or more grams of a mixture or substance containing 5 or more grams of methamphetamine, in violation of 21 U.S.C. § 841(a)(1). (Dkt. 5 at 1.) On April 21, 2011, the United States District Court for the Eastern District of Washington sentenced him to 195 months of imprisonment and five years of supervised release.

The incident at issue took place while Petitioner was serving that sentence at FCI Englewood, Colorado. (Dkt. 5 at 5.) On August 21, 2015, Darren Jackson, a technician in the Special Investigative Services Department at FCI Englewood, filed an incident report, stating that he had observed an inmate returning from off bureau property and carrying a plastic bag. (Dkt. 5-3 at 1.) Officer Jackson began to follow the inmate, and radioed another officer, who stopped the inmate at the northeast end of the housing unit and identified him as Petitioner Hall.

(Dkt. 5-4 at 2.)  Petitioner was detained, and the officers searched the area for the bag, which was found to contain three bottles of vodka, two cans of chewing tobacco, one pack of cigarettes, and one can of cigarette tobacco.  (*Id*.)  There was also a water bottle that was found to contain alcohol.  (*Id*.)

Petitioner was charged with introduction of alcohol to the prison camp, possession of alcohol, and escape from a non-secure confinement with subsequent voluntary return within four hours.  (*Id*.)  Petitioner was informed of these charges and advised of his rights.  (*Id* at 2.)  On August 26, 2015, a hearing was held before the Unit Discipline Committee ("UDC").  (*Id*. at 1.)  At that hearing, Petitioner requested video surveillance footage of the camp, which he believed would prove his innocence.  (*Id*.)  The UDC referred the incident to the Discipline Hearing Officer ("DHO") due to the severity of the charged offense.  (*Id*.)

The DHO held a hearing on September 23, 2015.  (Dkt. 5-7 at 1.)  The DHO reviewed photographs of the contraband described in the incident report, as well as the statements of several staff members who were involved in the incident.  (Dkt. 5-7 at 2-3.)  Petitioner submitted his own written statement, and requested three inmate witnesses, who

provided written statements, which stated that Petitioner was not in the area when the incident took place and he "got caught in the middle of someone else's doings." (Dkt. 5-7 at 1.) Petitioner did not submit any other documentary evidence and waived staff representation. (Dkt. 5-7 at 2.) The DHO noted that the video surveillance of FCI Englewood from that day "did not show the deck area so the video was of no use either to prove or disprove [Petitioner's] location at the time of the incident." (Dkt. 5-7 at 3.)

The DHO dismissed the escape charge and the introduction of alcohol charge because, based on the evidence, the DHO was "not confident" Petitioner had introduced the alcohol from outside the camp grounds. (Dkt. 5-7 at 3.) But the DHO found that "based on the greater weight of the evidence," Petitioner violated Code 113 by possessing alcohol on camp grounds. (*Id.*)

Petitioner has since been transferred to FCI Milan, Michigan, and now seeks a writ of habeas corpus under 28 U.S.C. § 2241, alleging the DHO finding was erroneous because the DHO did not have sufficient evidence to support a finding he violated Code 113. He further alleges

DHO violated his due process rights by failing to produce video evidence requested at the initial hearing.  (Dkt. 1 at 6.)

## II.    Legal Standard

28 U.S.C. § 2241 "is an affirmative grant of power to federal courts to issue writs of habeas corpus to prisoners being held 'in violation of the Constitution or laws or treaties of the United States.'"  *Rice v. White*, 660 F.3d 242, 249 (6th Cir. 2011).  The loss of good-time credits entitles a prisoner to seek habeas relief under 28 U.S.C. § 2241.  *Preiser v. Rodriguez*, 411 U.S. 475 (1973).  But before habeas relief can be granted, prisoners must exhaust their administrative remedies: "§ 2254's exhaustion requirement applies to § 2241 petitions challenging the execution of a sentence, even though that statute does not mandate exhaustion by its own terms."  *Fazzini v. Ne. Ohio Corr. Ctr.*, 473 F.3d 229, 236 (6th Cir. 2006).

Because revocation of good time credits is "not comparable" to a criminal conviction, the amount of evidence required to support such a revocation need not meet the same standard. *Superintendent, Mass.*

*Corr. Inst. v. Hill*, 472 U.S. 445, 456 (1985). Instead, the decision to revoke good time credits must be supported by "some evidence." *Id*.

Further, to meet due process standards in a prison disciplinary hearing that may result in the loss of good time credits, an inmate must receive advance written notice of the charges, an opportunity to call witnesses and present documentary evidence in his or her defense, and a written statement by the factfinder describing the reasons for the disciplinary action and the evidence relied on. *Wolff v. McDonnell*, 418 U.S. 539, 563-67 (1974).

## III. Analysis

Petitioner argues that the DHO did not meet the "greater weight of the evidence" standard in finding he violated Code 113. (Dkt. 1 at 5.) He also argues his due process rights were violated when the DHO failed to produce the video evidence he requested. (*Id*.at 6.) The government argues that these claims should be dismissed because Petitioner failed to exhaust his administrative remedies and has also procedurally defaulted on his claims. (Dkt. 5 at 12.) Further, the government argues that the underlying claims do not entitle him to relief because the DHO had sufficient evidence on which to base its

decision, and complied with the necessary due process requirements in making that decision. (*Id.* at 14.)

## A. Procedural Default

The government argues that the petition should be dismissed for failure to exhaust administrative remedies because Petitioner procedurally defaulted on his habeas claims. (Dkt. 5 at 12.) "Federal prisoners . . . must exhaust their administrative remedies before they may file a § 2241 petition." *Luedtke v. Berkebile*, 704 F.3d 465, 466 (6th Cir. 2013). When a prisoner fails to appeal an administrative decision in a timely manner, and therefore cannot obtain an administrative remedy, he has procedurally defaulted on the habeas claim. *Engle v. United States*, 26 F. App'x 394, 396 (6th Cir. 2001). Unless the petitioner can show cause and prejudice for the default, review of his habeas claim is barred. *Id.*

Hall began filing requests for an administrative remedy in October 2015. (Dkt. 5-8 at 4.) First, he appealed the DHO decision to the Bureau of Prisons' regional office. This appeal was denied by the regional director on April 5, 2016, citing evidence from staff members indicating Petitioner was in possession of the bag containing

contraband.  (*Id*. at 12.)  On July 5, 2016, Hall filed another appeal, this time with the Central Office for Inmate Appeals, which is the final level of administration.  (Dkt. 5 at 11.)  On August 4, 2016, this appeal was rejected for failure to comply with the filing regulations.  (*Id*. at 6.)  Petitioner was given 15 days to resubmit his appeal, but because his resubmission was not received until December 16, 2016, it was rejected as untimely.  (*Id*. at 7.)

Petitioner does not dispute that his resubmission was untimely, but argues that he had cause to miss the filing deadline, because the Central Office of the Federal Bureau of Prisons did not deliver the rejection notice and request for resubmission to him until November 22, 2016.  (Dkt. 6 at 1.)  Petitioner notes in his reply brief that the rejection notice is attached as Exhibit A, but no exhibits were filed with his brief.  (Dkt. 6 at 2.)  The government's exhibits do not include evidence of when the rejection notice was mailed to or received by Petitioner.  It is therefore not clear whether Petitioner had cause to file his final appeal after the administrative filing deadline.

The Supreme Court has held there is no rule "that the procedural-bar issue must invariably be resolved first" or before the merits of the

potentially defaulted claims. *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997). "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Id.* Thus, a federal court may "proceed directly to the merits of [the] claim" when "the question of procedural default presents a complicated question of [state] law" or "is unnecessary to [the] disposition of the case." *Hudson v. Jones*, 351 F.3d 212, 216 (6th Cir. 2003). Here, as set forth below, it is clear that Petitioner's claim lacks merit. The court will therefore set aside the procedural default issue and proceed to the merits.

## B. Merits

### i. There is Sufficient Evidence to Support the DHO Findings

Petitioner argues that the DHO did not meet the "greater weight of the evidence" standard to support its finding of a Code 113 violation. (Dkt. 1 at 6.)

As set forth above, prison disciplinary decisions, including the decision to revoke good time credits, must be supported by "some evidence." *Hill*, 472 U.S. at 456. In determining whether this standard

has been met, courts do not examine the entire record, make an independent assessment of the credibility of witnesses, or weigh the evidence. (*Id*. at 455.) The relevant inquiry is simply whether there is "any evidence in the record that could support the conclusion reached by the disciplinary board." *Id*.; *see also Williams v. Bass*, 63 F.3d 483, 485 (6th Cir. 1995) ("[N]ot much evidence is required to support the action of a prison disciplinary board.").

Here, the DHO had sufficient evidence to find that Petitioner possessed alcohol in violation of Code 113. The DHO based its finding on the information contained in the initial incident report and memoranda from officers involved in the incident. (Dkts. 5-3, 5-4.) These memoranda stated that officers observed Petitioner carrying a black plastic trash bag with unknown contents. He dropped the bag, and an officer detained him. Staff retrieved the bag, and found tobacco, cigarettes, vodka bottles, and a water bottle filled with alcohol. (Dkt. 5-6.) These items were photographed and considered as evidence in the DHO hearing. (Dkt. 5-3 at 3-6.) Because this evidence could support the conclusion reached by the disciplinary board, and it is not the role of

this Court to assess the credibility of the witnesses or examine the entire record, it satisfies *Hill*'s "some evidence" standard.

Petitioner contends that the DHO's ruling was "inconsistent" because he was found guilty of the alcohol possession charge, but the escape charge and the introduction of alcohol charge were dropped. (Dkt 1 at 6.) He states that the DHO was "'not confident' that Petitioner was responsible for the contraband." (*Id*.) This, however, misreads the DHO report: the DHO expressed a lack of confidence only as to the escape and introduction of alcohol charges, not as to the possession of alcohol charge. (Dkt. 5-7 at 3.) As discussed above, the DHO relied on sufficient evidence to support the possession of alcohol charge, and because it is possible to improperly possess alcohol without improperly introducing it or escaping, it is not inconsistent for the DHO to have found Petitioner guilty of possession.

### ii. Petitioner's Due Process Rights Were Not Violated by the Unavailability of Video Evidence

Petitioner argues that his due process rights were violated because he did not receive copies of video surveillance that he requested and intended to use as evidence in his defense. (Dkt. 1 at 6.)

When a prison disciplinary hearing may result in the loss of good time credits, due process requires that the prison notify the prisoner in advance of the hearing, allow the prisoner an opportunity to call witnesses and present documentary evidence in his defense, and provide a written statement of the evidence relied on and the reason for the disciplinary action. *Wolff*, 418 U.S. at 563-67.

There is some uncertainty over what video was requested. In his initial petition, Petitioner stated that he requested "copies of camp video surveillance," without reference to a specific location in the camp. (Dkt. 1 at 6.) At the hearing, after Petitioner said he was on the deck at the time of the incident (Dkt. 5-7 at 1), the DHO informed him that they had inquired as to the existence of video showing the camp deck area he claimed to be in during the incident, and found that the video surveillance from the time of the incident did not show the deck area. (Dkt. 5-7 at 3.) Thus, the video could not prove or disprove Petitioner's location at the time of the incident. (*Id.*) In his reply, Petitioner clarifies that his request was not for video of the camp deck area, but for the "inner unit videotape" (Dkt. 6 at 1), arguing this falls within the

scope of *Wolff*'s "presentation of documentary evidence" requirement. (*Id.* at 3.) This videotape was not provided to him at the hearing.

Regardless of what video was requested, the government has met its due process obligations. Petitioner was informed of his hearing on August 26, 2015, well in advance of the September 23, 2015 hearing date. (Dkt. 5-5.) He was also informed of his rights in advance of the hearing. (Dkt. 5-6.) At the hearing, he was allowed the opportunity to call witnesses and present evidence in his defense, and the DHO provided a written statement describing the evidence they relied on and the reasons for the disciplinary action. (Dkt. 5-7.) These actions satisfy the due process requirements set out in *Wolff*. Provision of the video surveillance tape is not required to meet that standard, and in any event, the requested video would not prove Petitioner's innocence. Accordingly, the petition for a writ of habeas corpus is denied on this ground.

## IV.   Conclusion

For the reasons set forth above, the petition for a writ of habeas corpus is DENIED WITH PREJUDICE. (Dkt. 1.) In addition, because

this order closes petitioner's case, petitioner's motion to expedite is DENIED AS MOOT. (Dkt. 7.)

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability ("COA") is issued under 28 U.S.C. § 2253. Rule 11 of the Rules Governing Section 2254 Proceedings requires that the Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."

To obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right, 28 U.S.C. § 2253(c)(2), which is satisfied only if reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).

For the reasons set forth above, reasonable jurists would not find this Court's assessment of Petitioner's claims to be debatable or wrong, and Petitioner is not entitled to a certificate of

appealability. *See Millender v. Adams*, 187 F. Supp. 2d 852, 880 (E.D. Mich. 2002).

The Court further concludes that Petitioner should not be granted leave to proceed *in forma pauperis* on appeal, as any appeal would be frivolous. *See* Fed. R. App. P. 24(a).

IT IS SO ORDERED.

Dated: March 29, 2018          s/Judith E. Levy
Ann Arbor, Michigan           JUDITH E. LEVY
                              United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 29, 2018.

s/Shawna Burns
SHAWNA BURNS
Case Manager